May it please the court, counsel. I'm Daniel Rubin. I represent Mr. Romero. Mr. Romero was convicted because he was found in possession of a gun. The gun that was found after he was arrested for resisting under New Mexico's resisting statute. It was found after he was found to resist. The only thing Mr. Romero was accused of resisting was Officer Dollar's pat-down order. That pat-down order was clearly unlawful because it wasn't supported by reasonable suspicion that he was dangerous. Because the order itself was unlawful, Mr. Romero could not have legally resisted an unlawful order. Even if your honors found that the order was lawful, there was nothing that Mr. Romero did in the video that you've seen where he actually resisted. Because the arrest of Mr. Romero was unlawful for multiple reasons, and the gun was a fruit of that unlawful arrest, the gun should have been suppressed. How do you distinguish this case from Terry v. Ohio? Terry, the fact pattern, given the totality of the circumstances, they were watching men, and they were taking actions that looked to be potentially a robbery. Here we have a man, Mr. Romero, at a church on a Friday evening in broad daylight, 5.30 p.m., on an access road to one of our main highways in Las Cruces, the Highway 70, where there's cars passing by frequently at rush hour. All he's doing is peering into a church window. Officer Dollar passes him by. And because there's been reports of theft and of vandalism, not burglary, but theft. Not at that church. Not at that church, just in the area. Well, other churches. Correct, your honor. But ultimately, he turns around and he wants to investigate, which we think is reasonable. So he pulls up his car, he announces his presence, and he approaches Mr. Romero. At that point, Mr. Romero is no longer looking into the window. If I could stop you there, it still sounds pretty much like Terry. There's reasonable suspicion that warrants further investigation of burglary or vandalism. Well, your honor, I think given our fact pattern, we do concede that it was reasonable to investigate further. And then the officer sees a knife? The officer does see a knife. But within 18 seconds, and the time stamp data that I'd request the court to look at again, if they're willing to, is that second 44, when Officer Dollar arrives, and then just 18 seconds later, when he says, I want to pat you down, there's nothing to indicate dangerousness. And even in those brief 18 seconds. Why can't we presume dangerousness like in Terry between the reasonable suspicion of burglary, which is a potentially violent crime, and seeing a weapon, which is not a fact that was true in Terry? Why isn't the fact that reasonable suspicion of burglary almost raise an inference of potential officer safety concerns? Your honor, if we go back to the suppression hearing transcript, Officer Dollar talks about theft and vandalism. There's no mention of burglary. We think this was basically a factual finding that was clearly erroneous by the district court. Officer Dollar mentions that there have been reports of vandalism and theft. Does not mention burglary. The government, in its argument during the suppression hearing, brings up burglary. And then ultimately burglary just ends up passing through the briefs that you read. But if you go back to the transcript, there's no mention of burglary. So what we're left with is theft. Having said that, even if the court is stuck with burglary at this stage, we disagree that burglary is an inherently violent crime and has to possess a weapon and is dangerous. It's a breaking and entering of the dwelling with the intention of committing a felony therein. We disagree with the cases that were cited by the government that it has to involve a weapon and has to be dangerous. But ultimately, what I'm arguing today, your honor, is that if you look at what Officer Dollar testified to, there was no mention of burglary. It was theft. Theft is not inherently dangerous. It's not violent. And then we get to the video of the 18 seconds where Officer Dollar approaches Mr. Romero, who's got a water bottle in one hand and a charger in the other. And a pocket knife, which you read through the briefing, is incredibly common in New Mexico and legal. He had another knife concealed on him, right? After the fact, he had another knife. But again, in the transcript of the suppression hearing, Officer Dollar testified to seeing a knife, but then he backtracked when he was crossed and he said, no, actually, I didn't put that in my incident report, that I saw a knife, and I didn't put it on another pretrial interview that I had done. And ultimately, he was left with saying he'd only indicated there was a bulge. So even during the suppression hearing, he said that he didn't actually see a knife, just a bulge. But, yes, he was clearly armed. But there's nothing in those 18 seconds when he's given the order to, I want to frisk you, that was dangerous. The conversation was, what are you doing here? That was the one and only question about the reason why Officer Dollar had gone back to the church to investigate a theft or vandalism. And he answered, well, I'm filling up my water bottle and I'm charging my phone. Well, I think what he said is, I'm getting some water and trying to charge my phone. You're right. What's that? And it says, you don't have any weapons on you, do you? And he says, no, I've got a, okay, he says, let's pat you. Yes. And what happened at that moment, and, again, I think the video is so important to watch again and several times because he's reaching down to say, I've got a knife. He's answering his question. Officer Dollar acknowledged that at this suppression hearing. And he also acknowledged after being crossed that that's an answer he receives oftentimes. So because he's receiving that answer oftentimes, we can use that as an objectively reasonable police standard for what happens when you ask the question of, do you have any weapons? I've got a knife and people reach down. Again, the video shows that he wasn't reaching to lunge at him or anything else. And you can also tell, even though the video gets very escalated soon thereafter, at that moment, from Officer Dollar's demeanor, he's not in fear. He's not. He says, wait, wait a second. Or he says, so, no, I've got a, don't reach for it. Okay. And then he says, set that down. Let me pat you down real quick. And I think how this differs from Terry is that there's clearly no danger when he gives that order. And at that moment, that's the, you know. Yes. I mean, was there a fear of danger in Terry? It's an objective standard in any event, isn't it? Yes, it is. It's an objectively reasonable standard, we would say, of a trained police officer. And so, yes, we think that it doesn't meet that standard. However, even if the court determines that it was a lawful order, which we strongly disagree with, the whole extent of the tape, there's no resisting during the whole process. Now, Mr. Romero gets frustrated, as I think most normal people would be, you know, that he's filling up his water and charging a phone, and a police officer who's trained to de-escalate situations is the one who escalates the situation. But during the whole video, Officer Dollar did not have any reason to believe that Mr. Romero had a criminal record, that he was a drug dealer involved in gangs. He didn't know who Mr. Romero was. He didn't have a specific complaint on this evening that anyone was breaking into the church. And thus, ultimately, he lacked the basis to do the search. But again, Mr. Romero didn't resist. And we think this case is very similar to United States v. House, the Tenth Circuit case. The officer in House had been investigating suspicious activity, a call from a woman who heard noises in her basement. There was no evidence of forced entry or missing items. The officer approached Mr. House, who was on the street. Mr. House was holding a cell phone in his right, and his left hand was in his pocket. The officer asked if he could talk to Mr. House. And when Mr. House turned around, the officer noticed a bulge in his left coat pocket. Well, here, they're actually investigating crime in House. Here, there'd just been some report of vandalism and theft. So I think our facts are even better. Your facts are, so he says, let me pat you down real quick. Yes, Your Honor. Your client says, oh, man, why? And Officer Dollar's response is, listen to me, this can go smoothly or it can go rough for you. I suggest you go with what I'm asking you, all right, or I'll charge you with resisting, obstructing. It's your choice. Yes. Are you going to give me a ticket? I'm going to pat you down, handcuff you, and take you to jail. He does. And, again, he gives that order. And at that, from the moment he met Mr. Romero to the point where he throws him down on the ground and ultimately tases him, Mr. Romero does not resist. And it doesn't, nothing rises to the level of resistance. Mr. Romero doesn't flee. He doesn't fight back. He doesn't curse at the officer. The video clearly shows that the officer is the one who escalates the incident. So there's nothing that Mr. Romero has done to resist. At the moment, he says, I'm going to, you know, after I want to pat you down, I'm going to charge you with resisting. The government argued that any error that Mr. Officer Dollar made was reasonable error. We disagree, and we mention that in our briefs. There's no reasonable mistake of law here because the law is well established. Judge Gonzalez at the suppression hearing says that the New Mexico statute resisting refers to a defendant's overt physical act or defendant's refusal to obey lawfully placed commands. And we submit to the court that there's nothing in that video that Mr. Romero did where he makes an overt physical act to resist or doesn't obey the commands. And again, the video is very telling. And also the transcript's very telling because I think Officer Dollar confirms he didn't really, you know, ultimately resist any. He did what he's ultimately told. There was some huffing and puffing along the way. But again, I think anyone in that situation where a police officer is escalating the situation would potentially react similarly. What's your best case? Our best case on these facts. Your Honor, I think it's the House case. It's the Tenth Circuit case where the facts are a little more dangerous. There was a bulge in the pocket. There was an actual report of the crime. And in that case, they determined that the pat-down was unreasonable. So, Your Honor, if there's no further questions at this time, I'd like to reserve the rest of my time, please. All right, counsel. Good morning, Your Honors. May it please the court, counsel, Benjamin Christensen on behalf of the United States. I'd like to first directly address House where my opposing counsel left off and say I think there's a key factual difference between this case and House. And that is that in House, there was a call-out to a suspicion of burglary. But about 15 minutes before Mr. House was encountered, the officer had already investigated and determined that there was apparently no burglary at all. Thus, there was no reasonable suspicion of burglary. And that is, I think, the key distinction between these facts and the facts in House. There was no, absolutely no reason to think here that Romero was trying to vandalize or burglarize the church. I mean, he was on the outside of the church briefly looking in. But by the time the officer got there, he was just getting water and charging his cell phone. Your Honor, I believe that the reason is, as you stated, that he was seen peering into the windows of the church. I believe that Officer Dollar testified that he was peering or peeping. The church was empty at that hour and did not. But it was still during daylight hours. I mean, I just don't see that that is even a scintilla of evidence that somebody is trying to break in, let alone just minor vandalism. Your Honor, I respectfully, I think first that the issue of reasonable suspicion for burglary was conceded by a defendant. I believe that that was not something raised in their initial brief. As we noted in our response brief, they weren't challenging that. And I don't believe they responded in their reply and stated that they were, in fact, challenging that. That being said, I do believe that the looking into the window with the background that there had been other crimes at the church, at nearby churches, excuse me, within the past week, does establish reasonable suspicion for Officer Dollar to further investigate. Does it? It may. It may. But does it justify? This is Las Cruces, right? Yes, Your Honor. Okay. I'm going to ask you about that. Are you arguing the next case, too? No, Your Honor. Okay. Well, I'll ask the other lawyer because it's Las Cruces, too. And I'm just wondering if we're seeing a pattern here. But the situation is, assuming burglary, which I thought he said, assuming it for purpose of argument, not conceding it as a matter of fact. But I guess we're hearing different answers. But assuming for purpose of argument that this is suspicion of burglary, does that automatically justify a pat-down? I don't think that the court need go that far. Other circuits have held that a reasonable suspicion of a potentially violent crime like burglary does almost per se provide reasonable suspicion that the individual is armed and dangerous. But here, I think that it is a combination of the reasonable suspicion of burglary with the fact that defendant was armed. And I believe when the transcript is viewed in light of the video, admitted as much. And where Officer Dollar saw a knife. So you're saying that a showing, a visibly showing a knife clipped to your clothing constitutes a basis for a pat-down? No, Your Honor. The Tenth Circuit has, or this court has held that the test requires a reasonable suspicion that the individual is both armed and dangerous. And dangerous. But in Garcia, the court said that the armed prong informs the dangerous prong. So it's not to say that Daniel Boone in the forest is not justification for a pat-down? No, Your Honor. Daniel Boone in that case I do not believe has reasonable suspicion of burglary. Because there's no proof of dangerousness, right? Based on, yes. I believe that's correct. And your proof of dangerousness here is what? It is three-fold. I think the most important part is the reasonable suspicion of burglary, a violent crime. I think past that it is that Mr. Romero did reach for the knife. There was testimony at the suppression hearing that Officer Dollar viewed that as a safety issue. Then the fourth, or I'm sorry, the third aspect I believe is that this was an isolated empty parking lot. It was daytime. There were, it was close to a road. But certainly if a defendant had chosen to attack Officer Dollar, no one else would have been in any position to assist. I think that J.G. Bell had a question, I think. Go ahead. So I would like to turn to address probable cause under the resisting statute. Here I believe that the, both opinions of this court as well as the New Mexico Court of Appeals have held that refusal to obey a lawful command is in fact resisting under this particular subsection. And I think it's, I think here it's important to note that the district court made factual findings that defendant did in fact resist. The district court found, and there's been no challenge at any point that I think, until I believe this argument, that any finding by the district court was clearly erroneous. The district court found that there were, that Officer Dollar ordered the defendant to place the items in his hands on the ground and put his hands, turn and face the wall. And he did not do so. Officer Dollar then repeated the order, and again, Romero did not do anything in response to that. Finally, Officer Dollar was compelled to draw his taser and repeat the order once again. At that point, I believe it was the defendant placed the items on the ground but did not turn and face the wall. So finally, Officer Dollar said, go to the ground. He did not throw defendant to the ground. And defendant then went to the ground. This all occurred in a relatively short period of time. I believe that the district court found there was approximately 45 seconds, perhaps 44. But there was a clear finding by the district court that there's multiple refusals to obey a lawful command. That required Officer Dollar to escalate the situation. We have that video. Yes, Your Honor. And I expect we've looked at it. I've looked at it. Yes. And it seems to me like he is, other than expressing bewilderment about why he's being asked to do something, I just don't see even a scintilla of evidence of resistance. And the whole thing was 20 seconds. Are you saying that if you aren't down on the ground? I mean, he never ran. He never put up his fists. He never uttered a swear word. He never said no. He never even said no. He said why. And in the 20 seconds, he never got an answer why. And he did exactly what he was told to do. So, I mean, if this video and the conduct of this video supports a conclusion of resistance, then there is virtually no way you cannot resist. I mean, you could hardly have gotten to that ground any faster than a reasonable person would have done. Your Honor, I would state that the district court found that the video, when considered in light of the entire record, including the suppression hearing, where he was able to judge the credibility of Officer Dollar and hear what Officer Dollar perceived at the time, established that there was a refusal to obey a lawful command, and that is what the precedent establishes. So we have to decide whether that finding is clearly erroneous. Correct, Your Honor. That has not been challenged, I don't think, by a defendant. Well, that's what the appeal is. That is the appeal. The appeal says I didn't resist. The appeal says the evidence shows I didn't resist. But the appeal, Your Honor, does not state that the district court was clearly erroneous in its findings. That's not an argument that is made. I don't believe the words are even present. How else would you interpret an appeal that says the evidence shows I didn't resist? Your Honor, if I may go back one step, I think that the argument in the opening brief is that refusal to obey a lawful command is insufficient under the New Mexico statute. We responded to that in our response brief, and I think that we conclusively showed that's not true. The reply brief then adopts a new argument, which is that defendant never resisted at all. And I think that that sort of mutation of the argument is why there's never been an attempt to show that the district court's factual findings are clearly erroneous, up until counsel mentioned the words clearly erroneous in his argument. I'd like to turn to the alternate basis to finding that there was resisting here and that it's a reasonable mistake of law. I think that there is case law from both the New Mexico Court of Appeals as well as this court that recognizes that refusal to obey a lawful command is in fact sufficient under this statute. Counsel, I would like to ask to read the transcript with your permission and ask you at the point at which there is a failure to obey a lawful command. Officer Dollar shows up and says, hey, what's up, man, how are you? Romero, pretty good. You tell me when I reach the point where there's no obeying a lawful command. Officer Dollar, what's going on? Romero, I'm getting some water and charging my phone. Dollar, what's that? Mr. Romero, I'm getting some water and trying to charge my phone. Officer Dollar, you don't have any weapons or anything on you, do you? Mr. Romero, no, I've got a... And then he's... Immediately, he doesn't finish the sentence. The officer Dollar says, don't reach for it. Romero, okay. Dollar, set that down. Let me pat you down real quick. Dollar, excuse me, Romero, oh, man, why? Dollar, listen to me. This could go smoothly or it can go rough for you. I suggest you go with what I'm asking you, all right? Your Honor, I believe... Is that the point at which he's resisting? I believe that was the district court's factual finding, yes, that that's the point, that when Officer Dollar had to repeat his order because it was being disobeyed or refused is the point at which he was resisting under the New Mexico statute. Where did he refuse? Where did he say no? Well, I think that when viewed in the context of, as I said, the suppression hearing that the district court conducted, as well as the video, you can... The district court was able to see the recorded body language of... We can see the exact same recorded body language that the district court can see. This is one of those cases where we have the... The district court has no advantage over us on what happened at that encounter because we have seen the entire exact evidence as the district court saw it. I believe that's correct, Your Honor, except to the extent that you have not seen Officer Dollar's testimony in person, and that, I believe, is the basis. That, to me, is the justification for the clearly erroneous standard. If I may return to the reasonable mistake of law before concluding my argument, as I said, I think that the New Mexico Court of Appeals and Tenth Circuit cases have held that a failure to obey a lawful command is, in fact, a violation of this subsection D of the statute. Is the problem here is it's the delay in compliance? Is that because eventually it does comply, right? It's the delay. Why is the refusal to obey immediately? Why is the time lag legally significant? I think here, Your Honor, it's legally significant because it required Officer Dollar to repeat the command to escalate the situation by drawing his taser. I think that there is most likely some sort of minimum amount of time that would be required to refuse to obey a lawful command, but I think the amount of time that was sufficient for Officer Dollar to repeat the command and to also be forced to draw a defensive weapon and further repeat the command is more than enough to refuse to obey a lawful command. Well, here's the problem. You tell us that the refusal to obey the command is after the point at which the officer says, let me pat you down real quick. Yes, Your Honor. But the pat down has to be justified before it is requested, not after it is requested. And the only thing that took place after he said, let me pat you down real quick is the question why. Yes, Your Honor. I don't see the question why being resistance. And if somebody says it is, it seems to me that's clearly erroneous. I think, Your Honor, I would formulate it as two questions. The first being whether there was reasonable suspicion that a defendant was armed and dangerous such that Officer Dollar could order a pat down. Yeah, but I went through this. You didn't tell me that any of that proved that he was armed and dangerous. Yeah, I'm sorry, Your Honor. I understood that you were asking me to prove where he resisted. I believe that the facts that established No, not where he resisted, where he refused to obey an order. Oh, I'm sorry. Yes. I believe the facts that establish reasonable suspicion are complete when defendant confirms that he has a weapon and reaches for it. Well, I'd like to finish the last three sentences of that sequence of questions. And Romero says, are you going to give me a ticket or what? And Officer Dollar says, I'm going to put you in handcuffs and take you to jail. Romero, I don't want to go to jail. At that point, Dollar, the officer, pulls out his gun and he points it at Romero. And then he's going to throw him in handcuffs and then he's going to slap a taser on the guy. No resistance, or at least not that we saw in the video, no resistance from the transcript that we made of the video. I just don't see it. I mean, I hear your argument, but it's premised on a lot of conclusions that I don't, you know, it's only one judge, but I just didn't see it as it was justified. Your Honor, I believe that the refusal is viewable in the video and it is established in the transcript when Officer Dollar is forced to, I see my time is up, may I finish? Go ahead. It's apparent in the transcript when Officer Dollar is forced to repeat his order. All right. And I apologize for arguing with you. All right, counsel, thank you. Appreciate the argument. Your Honors, we believe the factual findings are clearly erroneous in the following circumstances. One, that there's just no behavior that rises to a level of resistance. Well, more importantly, did you concede that this was a burglary? Your Honor, in the opening brief, ultimately, yes, we did. But again, we submitted the transcript. You conceded what? We conceded that he was investigating a burglary. But even having said that, we disagree with the fact that a burglary is inherently violent and that a person must be dangerous. So I still don't think you get to the pat-down. Why do you make that concession? I don't understand. Your Honor, I think what happened was I wasn't involved with the original case and then I didn't write the appeal, I just stepped in to argue. But I think what happened is at the suppression hearing, Officer Dollar made it clear that it was only theft or vandalism, and then the government commingled the terms burglary and theft. We didn't object to the suppression hearing, and then it just evolved into that in the brief. But I think we could be potentially saved in that the transcript of the suppression hearing, it only says theft and vandalism by the actual officer providing the evidence. The second clearly erroneous factual finding is that the second knife was never, by Officer Dollar, determined to be a knife at all. It was just a bulge. And there's no indication that it was anything other than a knife. Additionally, I guess we've conceded that it could have potentially been a burglary, but I think we're still in a good position because burglary is not inherently dangerous and it doesn't necessarily involve a weapon at all. They're not violent. Felony cases presume that burglaries are inherently violent. Some cases do, Your Honor, yes, and I know the government has cited those. Right. Also, the resisting finding, based on all the facts, was clearly erroneous. And again, back to the knife, the knife that was seen was a pocket knife, and Officer Dollar conceded that that's something that's common in New Mexico. He sees it multiple times per day. He also sees Mr. Romero's reaction of saying, yeah, I've got a knife, or yes, and reaching down is consistent. So the district court concluded on the evidence that we saw that he was resisting. Yes, Your Honor. And when did you argue that that was a clearly erroneous finding? I believe we did in our opening brief, Your Honor. I believe we did. Your Honor, you also asked for the best case. I also think in terms of whether he resisted or not, Maryland v. Pringle, the Supreme Court case, sets out what an objectively reasonable police officer would believe if he's resisting or not. And I think an objectively reasonable police officer would think no way is this person resisting and wouldn't escalate the situation as Officer Dollar did. Your Honors, we're asking, we're requesting this court to find that his motion of suppression should have been granted, vacate his conviction and sentence, remand for further proceedings, and grant other relief as this court finds appropriate. Thank you. Thank you, counsel. Counselor excused. Case is submitted.